TEXAS EMPLOYERS' INSURANCE ASSOCIATION V. HENRY SHELTON.

No. A-7576. Decided October 5, 1960.
Rehearing Overruled November 16, 1960.
(339 S.W. 2d Series 519)

*Underwood, Wilson, Sutton, Heare & Berry* and *R. P. Wilson* of Amarillo, for petitioner.

*Gordon, Gordon & Buzzard* and *Ross N. Buzzard,* of Pampa, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

The respondent, Shelton, claimed that his chest, upper abdomen, esophagus, stomach and diaphragm were injured and that he had sustained a herniation of a portion of the cardiac end of the stomach through the esophageal hiatus. The judgment

of the trial court awarding him recovery as for a general injury has been affirmed by the Court of Civil Appeals. 331 S.W. 2d 361.

While the case was pending before The Industrial Accident Board the Association tendered an operation by letter to the Board reading as follows:

"Pursuant to Article 8306, Section 12b Revised Civil Statutes of Texas, the insurer, Texas Employers' Insurance Association, tenders relief by operation; and, in event the employee should refuse to submit to an operation, the insurer requests that the Board shall immediately order a medical examination in the manner prescribed by said Section 12b and that the Board shall then proceed in accordance with said Section 12 b.

"In thus tendering surgical relief the insurer does not admit, but denies, that the employee has in fact sustained a compensable hernia, and it reserves the right, in event the matter should be appealed to the courts by either party, to contest the compensable character of the hernia."

A few days later the Association notified the Board that if it was not agreed that Section 12b was applicable then the tender of surgery was made in compliance with Section 12e. Upon being notified of this tender Shelton's attorney informed the Board that upon the advice of competent physicians the claimant regards surgery as inadvisable.

No examination to determine the matter ov advisability was ordered by the Board and some time thereafter the Board, finding that no proof had been offered showing that Shelton's condition was the result of an accidental injury suffered in the course of his employment, denied his claim. Shelton appealed from the Board's final order.

The contention of the Association is that after it had tendered to Shelton an operation before The Industrial Accident Board it should have been permitted to assert that defense and to introduce evidence tending to show the benefits of that operation.

The limiting language and the reservation expressed in the Association's tender of the operation is not clear. It does not expressly assume any obligation though impliedly so as to the payment of surgical and hospital expense. It does not admit

general liability in so many words nor does the letter carry that import. The Association argues that in making the tender of surgery under Section 12e it subjected itself (a) to the cost of the operation; (b) to the additional liability of paying compensation for either 26 or 52 weeks in the event there was a successful operation; (c) it may or may not have subjected itself to further liability to pay compensation in event of an unsuccessful operation.

The insurer says that "[it] persistently pursued the matter of operative relief so long as the matter was before the Board and the record makes it quite plain that it was respondent who successfully headed off petitioner's effort before the Board to reduce its potential liability by tendering operative relief." But the Board in all probability would have ordered an examination to determine the advisability had it not concluded that there was no liability on the part of the insurer, and since the insurer had not admitted liability, the Board was not authorized under its finding on the matter of liability to order an examination and operation. Evidently the Board did not consider that insurer had admitted liability otherwise it would not have denied the claim in toto.

Insurer raises the question as to whether this diaphragmatic hiatus hernia is a hernia that comes under the provisions of Section 12b and says that the trial court refused to submit to the jury an opportunity to determine that question. In our disposition of the case it is of little moment, we think, whether the injury described is one to be administered under 12b or 12e. We are of the opinion, however, that this poses a question of law rather than of fact for determination by the jury. The question for decision by the Court would not arise until liability was admitted and the tender of the operation had been acted upon by the Board.

■ Although it is probably not material here, yet clearly, we think, the injury alleged to have been sustained by this claimant is not such a hernia as is contemplated by Section 12b. Under that section the term is used in its popular sense, and usually refers to the inguinal type. Lewis v. American Surety Co., 143 Texas 286, 184 S.W. 2d 137. The inguinal type is one that is readily diagnosed and usually corrected by a comparatively simple operation. That is the reason for this sort of injury being specially treated by the Legislature. On the other hand this hiatus hernia, an opening through the esophagus, is described by medical testimony as a hernia that allows the contents of

the abdominal cavity to go through the opening and to get into the chest cage. The condition is one that is usually demonstrated by X'ray examination. One of the medical witnesses testified that this hiatus hernia operation is a "bigger one" than required for an inguinal hernia. He also said:

"The inguinal hernia is right out practically on the skin. The diaphragm you have to go through the abdomen or thoracic cavity and pull the stomach out of the way. It is deeper situated anatomically. From the standpoint of the surgeon it is a more difficult procedure."

■ While this case differs factually in some respects, yet it is controlled by our opinion handed down this day in Truck Insurance Exchange v. Charles Seelbach, Ante p. 250. The tender of an operation without the admission of liability renders testimony relating to the beneficial effects of an operation inadmissible on the trial of the case on appeal.

Petitioner argues that in tendering the operation it had done all that the statute requires.

In Traders & General Insurance Co. v. Wilkinson, Texas Civ. App. wr. ref. n.r.e., 261 S.W. 2d 863, and Texas Employers' Ins. Ass'n. v. Chancellor, Texas Civ. App., wr. ref. n.r.e., 292 S.W. 2d 360, an operation was tendered, the employee refused and the Board ordered the operation. The Court of Civil Appeals held in these cases that although the Board failed to follow strictly the procedural steps prescribed by the statute as a prerequisite to the entry of an order directing the employee to submit himself to the operation, nevertheless the insurance carrier was not denied the right to try the issue as to whether the operation was advisable or not on the de novo trial in the district court. We think these cases do not support petitioner's contention here.

The judgments below are affirmed.

Opinion delivered October 5, 1960.

Rehearing overruled November 16, 1960.