AGNES L. LOVELESS *v.* GARRISON FURNITURE COMPANY AND TRI STATE INSURANCE CO.

5-5779                                    475 S.W. 2d 158

Opinion delivered January 17, 1972

*Frank W. Booth,* for appellant.

*Daily, West, Core & Coffman,* for appellees.

JOHN A. FOGLEMAN, Justice. We reverse that part of the judgment of the circuit court which held that appel-

lant was not entitled to workmen's compensation bene-
fits because she did not show compliance with the re-
quirements of Ark. Stat. Ann. § 81-1313(e) (Repl. 1960),
but we affirm that part of the judgment sustaining the
Workmen's Compensation Commission's holding that
she was not entitled to permanent disability benefits.

Appellant was employed by Garrison Furniture
Company putting bases on china cabinets. She had com-
plained to the union shop steward that lifting the cabi-
nets was causing her pain and making her sick. On
September 12, 1969, she became ill and said that she
observed a swelling in the region of her stomach follow-
ing a considerable amount of lifting. She said that she
became deathly sick, experienced sharp pains, thought
she was going to black out, left work and stayed away
for about three weeks while a doctor ran tests. She told
her foreman when she left that she was sick and couldn't
work, and then went to Dr. J. Earle White III. This
was the first time she had ever become ill as a result of
lifting. She went back to the same job and kept getting
sick and taking a day or two off to recover. She had
more severe pain in March 1970. She was sick on Satur-
day and Sunday but returned to work on Monday,
March 15, when she again became ill after lifting some
china cabinets. She again went to Dr. White and was
off work until April 6 or 7, 1970, after which she was
changed to lighter work. Neither the claimant, nor any-
one in her behalf, gave notice of an injury in Septem-
ber. She actually asserted a claim against United Furni-
ture Workers Insurance Fund, and did not make any
claim for Workmen's Compensation until that claim
was denied, partially on the ground that her doctor's
statement showed that her March disability was due to
circumstances arising from her employment.

The medical evidence consists of a statement dated
September 12, 1969, affirming that Mrs. Loveless was ad-
vised not to work for three weeks pending completion
of medical evaluation, a letter dated May 11, 1970, and
a report dated June 11, 1970, all by Dr. White.

The letter recited that the symptoms related by the
claimant on September 12, 1969, were characteristic of

a hiatus hernia. They consisted of pain in the epigastrium extending to the back, aggravated by lifting at her job. It also related a return visit by appellant on December 11 because of exacerbation of her epigastric pain to the back and her complaint of a knot under the sternum after she lifted heavy objects at work. Her symptoms were relieved, he related, by Gelusil M given in the office, and he said that medical therapy led to remission of symptoms on both occasions. On her return on March 19, it was revealed to the doctor, according to this letter, that she had a recurrence of the epigastric pain after lifting a 250-pound sack at her work. After stating that the patient felt that the treatment of her hernia had relieved her symptoms until they returned after she lifted objects, the doctor added:

> No x-rays of the stomach were obtained because of her clinically favorable response together with the fact that either demonstration of the hernia or not demonstration of it on x-ray would not affect the clinical evidence of prompt remission of symptoms with therapy. We shall be happy to get an x-ray of her stomach if you require it for your purposes.

The medical reports showed the date of accident as September 12, 1969, office visits on September 12, September 26, December 11, 1969, March 19, and May 25, 1970, diagnosis as hiatus hernia and thyroiditis (the latter not the result of accident), and disability of three weeks and three days, ending April 6, 1970. The treatment recommended was "Librax 1 qid, Gelucil M 15 cc per hour while awake, elevation of head of bed and avoidance of heavy lifting."

The referee allowed temporary total disability benefits for the periods of September 13, 1969, through September 28, 1969, and March 16, 1970, through April 5, 1970. He denied the defense that the claimant had failed to meet the requirements of the hernia statute on the authority of previous holdings by the Workmen's Compensation Commission that a hiatal hernia is not a hernia under the Workmen's Compensation Act. The

commission reviewed the claim thoroughly, after which a majority affirmed the referee's decision, holding that a hiatal hernia is not a hernia within the meaning of Ark. Stat. Ann. § 81-1313(e). It noted that its position had been sustained on appeal to the Pulaski Circuit Court in one case and reversed by the Sebastian Circuit Court in another. In this case, the circuit court followed its earlier precedent and set aside the award made to appellant.

This is the first time this court has been called upon to determine the application of § 81-1313(e) to a hiatal (or hiatus) hernia. In making this determination, the cardinal rule to be observed is that the act be construed liberally and doubts resolved in favor of a claimant. *Potlatch Forests, Inc.* v. *Funk,* 239 Ark. 330, 389 S. W. 2d 237. In an earlier case construing this section we held that a prolapse of the uterus with cystocele was not a hernia as that word is used in the statute. *Bottoms Baptist Orphanage* v. *Johnson,* 240 Ark. 175, 398 S. W. 2d 544. There we said that the rule of liberal construction required a strict construction of this section, since it was in the nature of an exception. Application of this principle leads us to the conclusion that a hiatal hernia is not a hernia within the meaning of this section, and that appellant's claim was governed by the general provisions of the Workmen's Compensation Act and not the special requirements of the hernia section.

Both appellant and the commission rely upon the definition of hiatus hernia in Schmidt's Attorneys' Dictionary of Medicine (1969), which is as follows:

A herniation or protrusion through the diaphragm, at the place where the esophagus passes through it. The protruding structure is usually a part of the stomach. The diaphragm is a sheet of muscular tissue stretched transversely within the trunk so as to separate the chest from the abdomen. Since the stomach is below the diaphragm, the esophagus (gullet) must pass through the diaphragm to reach the stomach. (The esophagus or gullet conveys the swallowed food to the stomach.) At the point where

the esophagus pierces the diaphragm, there is a weak spot called the hiatus. Occasionally, when this spot is weaker than normal, a piece of stomach may be pushed up through it, intermittently.

In Dorland's American Illustrated Medical Dictionary, 22nd Edition (1951) the term is defined as the protrusion of any structure through the esophageal hiatus of the diaphragm.

In *Bottoms,* we expressly postponed the decision whether various types of abdominal hernia came within the purview of this section. Still, in reaching our conclusion there, we followed the general practice in confining the meaning of "hernia" in workmen's compensation statutes to its popular, and, therefore, more limited sense. There we referred to the Texas cases holding that this word in the statute had a very narrow scope. In *Texas Employers' Ins. Assn.* v. *Shelton,* 161 Tex. 259, 339 S. W. 2d 519, cited in *Bottoms,* the Texas Supreme Court held that a diaphragmatic hiatus hernia was not such a hernia as contemplated by the Texas statute, noting that the relative ease with which the usual inguinal hernia could be diagnosed and surgically corrected accounted for special legislative treatment of that sort of injury. We noted there that the Texas statute did not seem to restrict the word to the abdominal region, as does ours in requiring that it be shown that the occurrence of the hernia followed as a result of sudden effort, severe strain or the application of force directly to the abdominal wall. Because of this language in the Arkansas statute, and in view of other decisions, we held that the word meant a protrusion of an organ from the abdominal cavity through an abnormal opening in the abdominal wall. The question before us then really turns upon whether the esophogeal hiatus is an abnormal opening in the abdominal wall. We do not believe that a finding that it is would be justified.

According to Dorland's Medical Dictionary, the hiatus oesophogeous is the esophageal opening or foremen of the diaphragm—the opening in the diaphragm for the passage of the esophagus and the pneumo-

gastric nerves. In Schmidt's Attorneys' Dictionary of Medicine the abdominal wall is defined as follows:

> The tissues, composed of skin, fascia, muscles, peritoneum, etc., which make up the wall of the trunk in the region of the abdomen and contain the abdominal organs. Although, technically, the abdominal wall is continuous all around, in the manner of a barrel, the term is generally meant to designate the front and sides of this circumference, especially the front. Moreover, one often hears the term used in the plural, abdominal walls, by which is meant the front and side aspects of the wall.

In defining abdomen as the cavity between the thorax and the pelvis containing the viscera and inclosed by a wall, Dorland's Medical Dictionary treats the adbominal wall or parietes as being formed by the abdominal muscles, vertebral column and the ilia. In 3 Gray's Attorneys' Textbook of Medicine, Third Edition (1971), par. 65.190, we find the following comment:

> While the protrusion of some of the abdominal contents into the chest cavity through a defect in the diaphragm (congenital or traumatic) is in the true sense a "hernia," and incarceration or strangulation of such abdominal contents by the hernial ring is a serious and emergency condition, this type of congenital defect and especially this type of injury (to the diaphragm) more properly belongs in a discussion of chest injuries, than in a chapter mainly concerned with hernias involving the abdominal wall, inguinal, or femoral rings.

The Workmen's Compensation Commission quoted from Blair's Reference Guide to Workmen's Compensation Law, § 7:00 (1971) as follows:

> The term "hernia" as used in these special statutory provisions, is generally defined as a protrusion of an internal organ in whole or in part from its natural position. The term sometimes includes a prolapse of the rectum, diaphragmatic hernias and

abdominal hernias, but excludes such herniations as a prolapse of the uterus, ruptured discs (hernia nucleus pulposus), and esophageal hiatus hernias.

We find that the Pennsylvania courts refuse to extend the application of the hernia statute to any purely internal hernia, *i. e.,* one which is not evidenced by any external protrusion. See *Kinsman* v. *R. F. Post Co.,* 152 Pa. Super. 67, 31 A. 2d 358 (1943); *Fye* v. *Baltimore & O. R. Co.,* 133 Pa. Super. 550, 3 A. 2d 275 (1938). In Mississippi, the Supreme Court stated without elaboration that exclusion of one type of hernia and inclusion of another would be contrary to the legislative intent. *Commans* v. *Ingalls Shipbuilding Corp.,* 240 Miss. 373, 128 So. 2d 114 (1961). This position, we said in *Bottoms,* was inconsistent with the reasoning of the Texas cases relied upon by us. Apparently, a prolapse of the uterus would be within the scope of the Mississippi hernia statute according to their construction. On the other hand, the Supreme Court of Tennessee held that it was not the legislative intent to require that a diaphragmatic hernia be proven according to the terms of the hernia statute. *Sullivan* v. *Green,* 206 Tenn. 42, 331 S. W. 2d 686 (1960). That court expressed doubt that the type hernia involved (hiatus) was generally known among the laity when the statute was passed in 1941. See Tenn. Code Ann. § 50-1009 (Repl. 1966). In *Pendell* v. *Westland Life Ins. Co.,* 95 Cal. App. 2d 766, 214 P. 2d 392 (1950), an esophageal hiatus diaphragmatic hernia was held not to be a hernia subject to a specific indemnity limitation in an accidental bodily injury policy. Even though a statute was not involved, the same construction policy applied, because the clause involved was one limiting indemnity for a hernia.

In the cases holding that the hiatal hernia is not included in the general term hernia, empasis is given to the comparative lower incidence, the more frequent lack of readily discernible physical evidence and the more complex corrective surgery of this type than of the more familiar hernia, such as inguinal. While we certainly would not say that the word hernia in § 81-1313(e) means only an inguinal hernia, we feel that it would be

more consistent with the reasoning and result of our holding in *Bottoms* to say that it was not the legislative intent that a hiatal hernia come within the purview of that section. It was clearly indicated by the physician's statement in this case that response to appropriate therapy is a more reliable means of diagnosis of a hiatus hernia than even x-ray. This is certainly not the case with the usual hernia. Meeting the requirements of § 81-1313(e) would be difficult in all cases and impossible in most cases where hiatal hernia is involved.

Appellant argues that she should have been awarded permanent disability benefits because her condition will not permit her to do work requiring lifting. She contends that this limitation of activities and employment possibilities causes both physical and economic impairment for which she should receive benefits, saying that appellant did not produce sufficient evidence tion can never be corrected.

The evidence shows that claimant is working for the same employer in the same department, even though she is doing lighter work in the sense that lifting heavy objects is not required. There is nothing to indicate that either the amount of her earnings or her earning capacity was diminished. We cannot say that the Workmen's Compensation Commission was in error in holding that appellant did not produce sufficient evidence on which to base an award for permanent disability.

That part of the judgment denying temporary disability benefits is reversed and that part denying any permanent disability benefits is affirmed.