## INDUSTRIAL ACCIDENT BOARD OF TEXAS et al. v. HUDSON.

### No. 10016.

Court of Civil Appeals of Texas. Austin.

Feb. 13, 1952.

Price Daniel, Atty. Gen., Joe S. Moore, Asst. Atty. Gen., for Industrial Accident Board of Texas.

Robertson, Jackson, Payne, Lancaster & Walker and Claude Williams, all of Dallas, for General Accident Fire & Life Assur. Corp., Ltd.

White & Yarborough and W. E. Johnson, all of Dallas, for appellee.

GRAY, Justice.

This suit was brought by appellee seeking a writ of mandamus requiring the Industrial Accident Board to make a final decision in his claim for compensation filed with the Board. H. K. Ferguson Company was appellee's employer and General Accident Fire and Life Assurance Corporation, Ltd., was the insurance carrier. The insurance carrier was made a party to the suit and, with the Board, has appealed from a judgment awarding appellee the writ of mandamus as prayed for.

For the purposes of this appeal the facts are undisputed and show: On or about December 29, 1949, appellee sustained an injury to his left knee while in the employ of H. K. Ferguson at Grand Saline, Texas. Appellee filed his claim for compensation with the Board and the same was set down for hearing on May 2, 1950. On that date the insurance carrier made demand that a surgical operation be performed. On May 9, 1950, the Board notified appellee to present himself to Dr. Brandon Carrell at Dallas for a physical examination. Appellee did report to Dr. Carrell who made the examination, and on May 15, 1950, made his report to the Board wherein an operation was recommended. On June 15, 1950, the Board ordered appellee to submit to the operation at the hands of Dr. Carrell. Appellee de-

clined to submit to the operation and requested the Board to proceed to a final disposition of his case. By letter dated July 5, 1950, the Board notified appellee's attorneys that the Board would "not set the case for hearing until the order of June 15, 1950, is complied with." On August 2, 1950, appellee's attorneys urged the Board to take further action on appellee's claim and to enter a final ruling and decision. On August 28, 1950, the Board, on its own motion, reviewed its order of June 15, 1950. It found its previous order had not been complied with, and further:

"The Board finds and orders that, since said previous order has not been complied with by the Claimant, J. C. Hudson, said previous order is now superseded and supplemented by the following order, to-wit:

"The Board finds that written demand for performance of surgical operation was made by General Accident Fire and Life Assurance Corporation, Ltd., and the Board caused to be made by Dr. Brandon Carrell of Dallas, Texas, a report in writing as to the advisability of performance of surgical operation; that it is the opinion of examiner for the Board that a surgical operation is advisable and will effect a cure or will materially benefit claimant and will improve claimant's condition. Therefore, said Board unanimously agrees with Dr. Carrell's recommendation and so finds; and unanimously directs the said J. C. Hudson to submit himself to a surgical operation on his left knee at the hands of Dr. Brandon Carrell of Dallas, Texas, at the Baylor Hospital in Dallas, Texas, on September 7th, 1950. The said J. C. Hudson is further ordered and directed to present himself to Dr. Brandon Carrell on September 6, 1950, in order to make arrangements for said operation. The expense incident to said operation in the reasonable value thereof is to be provided and paid for by General Accident Fire & Life Assurance Corporation, Ltd. The Insurance Carrier, General Accident Fire & Life Assurance Corporation, Ltd., is also directed to pay claimant weekly compensation during his hospitalization and until further orders of this Board. Said Insurance Carrier is also ordered and directed to pay claimant all unpaid compensation that might be due for previous lost time, if any, within five days after claimant submits to such operation."

On September 8, 1950, appellee's attorneys advised the Board that appellee would not comply with its order of August 28. On September 13, the Board sent said attorneys its letter, which in part reads:

"We acknowledge receipt of your letter of September 8, 1950.

"It is still the unanimous opinion of this Board that your client should submit to the operation on his knee which has heretofore been ordered by this Board. Therefore, this Board refuses to take any further action in the above case until our order of August 28, 1950, has been complied with. We feel that it is for the best interests of your client to have this operation, and his welfare is the main concern of this Board.

"If the provisions of Section 12e of Article 8306 of the Revised Civil Statutes of Texas are meaningless and our procedure thereunder is not authorized or binding, the quicker we are made aware thereof, the better for all concerned."

At the trial it was established that since August 28, 1950, the Board had refused, and still does refuse, to enter any further order finally disposing of appellee's claim until appellee submits to an operation. Such refusal is conceded here.

Appellee was treated and was examined by doctors other than Dr. Carrell, some of whose reports were filed with the Board; however, we think it is not necessary to here set out or discuss those reports and examinations. Neither do we think it necessary nor helpful for us to discuss the reasons given by appellee for refusing to submit to an operation. We think the law, later noticed, plainly prescribes the procedure to be followed by the Board in the case before us.

■ The order of August 28, supra, is interlocutory, it does not finally dispose of appellee's claim for compensation and is not an appealable order. Texas Employees Ins. Ass'n v. Shackelford, 139 Tex. 653, 164 S.W.2d 657. The Board ascer-

tained that appellee refused to submit to the operation ordered by it and predicates its reason for its refusal to set the case for further hearing and final disposition on such refusal and assigns as authority for its action Section 12e of Article 8306, Revised Civil Statutes of Texas, which provides that in all cases where liability for compensation exists in favor of an injured employee and a surgical operation for such injury will effect a cure or will materially and beneficially improve the condition of the employee, the association or the employer may demand that a surgical operation be had as is provided in said section. If either party demands, in writing, such operation, the Board shall immediately order a medical examination of the employee "in the same manner as is provided for in the section of this law relating to hernia." If the examination, the report of facts and the opinion of experts, reduced to writing and filed with the Board, show that the operation is advisable, will relieve the condition of the injured employee, or will materially benefit him, the Board shall so state in writing, and upon the unanimous order of the Board the employee shall be directed at a stated time and place to submit himself to an operation by a physician therein named, "if the employé refuses to submit to such operation, the board may order or direct the association to suspend the whole or any part of his compensation during the time of said period of refusal. The results of such operation, the question as to whether the injured employé shall be required to submit thereto and the benefits and liabilities arising therefrom shall attach, be treated, handled and determined by the board in the same way as is provided in the case of hernia in this law."

Section 12b of Article 8306, supra, is the section of the law relating to hernia, and in part provides: "In all such cases where liability for compensation exists, the association shall provide competent surgical treatment by radical operation. In case the injured employé refuses to submit to the operation, the board shall immediately order a medical examination of such employee by a physician or physicians of its own selection at a time and place to be by them named, at which examination the employé and the association, or either of them, shall have the right to have his or their physician present. The physician or physicians so selected shall make to the board a written report, signed and sworn to, setting forth the facts developed at such examination and giving his or their opinion as to the advisability or nonadvisability of an operation. If it be shown to the board by such examination and such report thereof and the expert opinions thereon that the employé has any chronic disease or is otherwise in such physical condition as to render it more than ordinarily unsafe to submit to such operation he shall, if unwilling to submit to the operation, be entitled to compensation for incapacity under the general provisions of this law. If the examination and the written report thereof and the expert opinions thereon then on file before the board do not show to the board the existence of disease or other physical condition rendering the operation more than ordinarily unsafe and the board shall unanimously so find and so reduce its findings to writing and file the same in the case and furnish the employé and the association with a copy of its findings, then if the employé with the knowledge of the result of such examination, such report, such opinions and such findings, thereafter refuses to submit within a reasonable time, which time shall be fixed in the findings of the board, to such operation, he shall be entitled to compensation for incapacity under the general provisions of this law for a period not exceeding one year."

■ The law recognizes the right of an employee to refuse to submit to an operation ordered by the Board and makes provision for the action to be taken by the Board in the case of such refusal. It therefore appears that the Board did not handle and determine the case "in the same way as is provided in the case of hernia in this law."

■ Article 8307, Vernon's Ann.Civ. Stat., provides the steps to be taken in filing claims for compensation for injuries with the Board, and provides for appeals by interested parties who are not willing to

abide by the final rulings of the Board. In the case before us there has been no final award fixing the compensation to which appellee is entitled, nor denying him compensation. These questions must first be passed on by the Board before an appeal may be taken to the courts. Tally v. Texas Employees' Ins. Ass'n, 129 Tex. 134, 102 S.W.2d 180.

The action of the Board in refusing to set appellee's claim for compensation down for hearing and final disposition because of his refusal to submit to the operation ordered by it is not authorized by law, but, upon such refusal being made known to the Board, the law prescribes the action to be taken by it. Under the facts before us, a denial to appellee of the writ of mandamus prayed for would leave his case pending before the Board, would allow the Board, without authority of law, to refuse to proceed to a final disposition of the claim, and would deprive appellee of his right to be finally heard before the Board and before the courts.

We conclude that the writ of mandamus was properly issued by the trial court, and its judgment is affirmed.

Affirmed.