TRUCK INSURANCE EXCHANGE V. CHARLES SEELBACH.

No. A-7598. Decided October 5, 1960.
Rehearing Overruled November 16, 1960.
(339 S.W. 2d Series 521)

*Touchstone, Bernays & Johnston,* of Dallas for petitioner.

*Howard S. Smith,* of Sulphur Springs, and *Woodrow H. Edwards,* of Mt. Vernon, for respondents.

MR. JUSTICE CULVER delivered the opinion of the Court.

In this suit brought by respondent, Charles Seelbach, under the Workmen's Compensation Act, insurer raises the question as to whether or not medical testimony asserting the beneficial effects of surgery is admissible in the trial court on appeal where the insurer did not admit liability, where no operation was tendered or requested in the proceedings before the Industrial Accident Board, and where no surgery was indicated prior to the rendition of the final award by the Board.

The trial court's ruling in excluding that testimony was approved on appeal. 328 S.W. 2d 346. We have concluded that the Court of Civil Appeal correctly so held.

The decision of the Court of Civil Appeals in this case finds support in Texas Employers Insurance Ass'n. v. Kubiak, Texas Civ. App., 276 S.W. 2d 909, wr. ref. n.r.e., and American General Insurance Co. v. Quinn, Texas Civ. App., 277 S.W. 2d 223, wr. ref. n.r.e., both cases decided in 1955. General Accident Fire and Life Assurance Corp. v. Coffman, 326 S.W. 2d 287, wr. ref. n.r.e.[1] To the contrary is National Surety Corp. v. Bellah, 5th Cir., 1957, 245 F. 2d 936.

The instant case is the first to reach this Court on this

---

1.—Reversed by Court of Civil Appeals on other grounds, hence our refusal, n.r.e. is of no significance in consideration of our question here.

proposition since section 7, Art. 8306, and section 5, Art. 8307, Vernon's Anno. Texas Civ. Stat. were amended by the Legislature in 1957.

We granted this writ in order to re-examine the question in the light of the able and persuasive opinion by the 5th Circuit in Bellah [Supra] and to consider the effect thereon, if any, of the two foregoing amendments.

Several doctors had examined and treated Seelbach for a back injury, but none recommended surgery while the case was pending before the Board. In fact during that time no positive diagnosis had been made, yet the possibility of a herniated disc had not been ruled out. The gist of the medical testimony excluded in the trial court was that the accepted treatment for a ruptured intervertebral disc is a course of conservative therapy that may take from a year to eighteen months to determine whether that treatment will repair the injury. This treatment consists of muscle relaxants, heat, hard bed, posture, traction and that sort of thing. The doctor further offered to testify that in Seelbach's case a course of conservative treatment should be continued for some three to six months; if at the end of that time the injury had not responded then he would advise surgery; that surgery is a recognized procedure for the treatment of a ruptured disc and the operation is not attended with any particular risk to the life or limb of the patient; that in all reasonable probability following the operation and a period thereafter of three months' total disability, Seelbach would be able to return to his employment and to work the same number of hours and perform the same duties of a truck driver that he had been able to perform before the injury.

One of the medical witnesses testified that Seelbach had sustained a rupture or herniation to one or more of the intervertebral discs in the lumbar region of his back and as a result was totally and permanently incapacitated. The jury so found.

The insurer takes the position that the rule enunciated in the Quinn and Kubiak cases is erroneous, and if not, then our case is distinguishable from Quinn and Kubiak for two reasons, first, the need of an operation did not become apparent until long after the Industrial Accident Board had lost jurisdiction; second, the 1957 amendments to the Workmen's Compensation Act have been adopted since those cases were decided and there is now available at any time unlimited medical, nursing and hospital service for which the insurer is liable.

Seelbach's position is squarely based on the premise that if the insurer does not admit liability and tender an operation prior to the final Board award, it is thereafter precluded from offering any testimony as to the curative effect of surgery under any and all circumstances no matter what may be the later progressive development of the injury and regardless of the nature of the operation.

■ As so often said and so well recognized, the rights and obligations of the parties in a suit brought under the Workmen's Compensation Act are entirely controlled by the statute except in respect to those matters of form and procedure that are not prescribed. The Act is in derogation of the common law. Mingus v. Wadley, 115 Texas 551, 285 S.W. 1084; Middleton v. Texas Power & Light Co., 108 Texas 96, 185 S.W. 556. Where the statute directs that action be taken in a certain way it may be performed in no other manner. The trial court is not clothed with those powers that are placed exclusively with the Board. Thus the trial court has no power to order or supervise an operation or to direct a medical examination for the purpose of determining the advisability of that course.

■ The statute by no provision expressly refutes the admissibility of the excluded testimony, but we think it does so by necessary implication. The rule announced in Kubiak and Quinn is based on Texas Employers Insurance Ass'n. v. Tally, 132 Texas 547, 125 S.W. 2d 544, and National Mutual Casualty Co. v. Lowery, 136 Texas 188, 148 S.W. 2d 1089.

In Lowery the Court held that unless the insurer admitted liability and tendered an operation while the claim was pending before the Board the claimant if compensated at all, must be compensated as for a general injury and the provisions of Art. 8306, section 12b could not be applied in the trial of the case on appeal. This holding is predicated on the ground that the district could not act as an administrative board and was not empowered to order or supervise a hernia operation. That decision is undoubtedly a correct statement of the law and is not questioned. The insurer argues, however, that Lowery is not controlling under the facts here and does not preclude the offered testimony. The insurer says it is not seeking to have the court order and supervise an operation or to apply the provisions of sections 12b and 12e, but that the proffered testimony is related and pertinent to the fact issue as to the extent and duration of incapacity and disability. It argues that the evidence of the probable effect of an an operation should be no more excluded than

the evidence as to the probable effect of the administration of drugs or of physiotherapy. While this position seems logical and reasonable yet we think it runs contrary to the statutory scheme of awarding compensation benefits. Although the insurer is not seeking exactly the same relief as prayed for by the insurer in Lowery, the admission of the evidence as to the effect of surgery would inferentially and necessarily raise a fact issue as to whether or not the operation was advisable; that it could be performed without probable risk; that the insurer would tender and pay for the operation and that it would cure or materially benefit the claimant. In our opinion all this would be tantamount to applying the provisions of sections 12b and 12e in the trial court.

We think the intention of the Legislature as disclosed by the wording of the Act is to exclude so far as possible conjecture and opinion evidence in the determination of the extent and duration of disability and incapacity of the particular individual. In other words, assuming that Seelbach in his present condition is totally and permanently disabled, then he is entitled to compensation either on the basis of total and permanent incapacity or to be cured or have his incapacity reduced by an operation. The benefits from surgery are to be determined not by evidence based on probabilities but rather on what has actually happened. If an operation had been performed under Board supervision the outcome of that operation with its effects on this man would be measured without resort to probabilities.

■ The law compels the employee to undergo the operation if tendered and deemed advisable by the Board in order that the effect of the operation may be determined with certainty or suffer the penalties provided. It does not compel him to submit to speculation or professional opinion as to the probable outcome of an operation or suffer the penalty.

The insurer says that ι ·der the 1957 amendments Seelbach, after recovering a final juc ment in the district court awarding to him compensation base on total and permanent disability, may thereafter apply to tʰ 3oard for and receive an operation that will completely cure substantially benefit him all at the expense of the insurer. S oach would thus be drawing compensation for total and ; nanent disability and at the same time be employed at full .;es. This would be unfair and unjust, says the carrier. Or. e other hand, consider the medical testimony that in all prob' lity Seelbach would be cured by an operation and return to rk with little, if any, disability. If the jury gave full credenc to this testimony it would award a

few months of total disability followed by ten per cent permanent partial. It might then be discovered that a later performed operation was of no benefit, but actually injurious. Admittedly, Seelbach would thus be totally and permanently disabled but would receive much less in the way of compensation than his condition would require. That result would be equally unfair and unjust. To permit such a termination would be contrary to the rule that the Workmen's Compensation Statutes should be liberally and fairly construed in the workman's favor to insure the full measure of his exclusive statutory remedy.

While section 12b is applicable only to an inguinal hernia and provides that the Board initiate the steps preliminary to an operation for that kind of injury, and section 12e relating to all other injuries is permissive and optional in that respect, all of that creates no distinction so far as the admissibility of this testimony is concerned. Section 12e concludes as follows:

"The results of such operation, the question as to whether the injured employee shall be required to submit thereto and the benefits and liabilities arising therefrom shall attach, be treated, handled and determined by the Board in the same way as is provided in the case of hernia in this law."

It must be conceded, we think, that in the case of an inguinal hernia where liability has not been admitted and the order for an operation has been refused by the insurer, testimony would not be admitted on appeal to prove that an operation would be successful and the disability reduced accordingly. Then it is difficult to see how or why it would be admissible in the case of any other kind of injury. The controlling principle is the same. To admit the evidence would be to enable the insurer to do indirectly that which it cannot do directly. So we again must approve the result reached in Quinn and Kubiak.

The next contention urged upon us by the insurer is that conceding that Kubiak and Quinn are correctly decided, nevertheless in this case where no operation was suggested or recommended during the Board proceedings and the need thereof having developed later, the testimony should be admitted as an exception to the rule as was held in National Surety Corp v. Bellah, supra. The exception as stated in that case by the 5th Circuit is:

"* * * Where the need for an operation of a specific kind is not patent while the matter is before the Board, the whole

policy of the Act and the right of the parties to contest one or more issues while admitting the others, * * * would be impeded by retrospectively considering what ought to have been, but was not, known or done before the Board."

We are impressed by the cogent reasoning for the result reached. It does appear inequitable to penalize in effect the insurance carrier for not making the tender of an operation when the need was not apparent and a tender would have been futile. But we must reject the theory that this lack of information creates an exception and largely so for the reasons we have given in sustaining the general rule of Kubiak and Quinn. It well may be that an operation on Seelbach might repair his injury and even restore him to normal health, but as we said above this is a probability and not at all a certain result. It must be regarded as a major operation and as to its advisability in this case or in other similar ones medical authorities may well differ. For instance we are cited to a 10th Circuit decision, Evans v. Stearns-Rogers Mfg. Co., 253 F. 2d 383, 387, wherein the seriousness of this character of surgery was discussed. In this workmen's compensation case the reduction of the award on account of the refusal of the workman to submit to the operation was held to be erroneous. "We can find" said the Court "no case involving surgery for the removal of a herniated vertebrae in which the injured workman's refusal to submit to corrective surgery was permitted to reduce the amount of his award. On the contrary the authorities uniformly hold the refusal in said cases to be entirely reasonable." It is not to be understood, however, that by citing the foregoing case that we approve the holding therein.

Additionally it may be pointed out that so long as the Insurance Association is paying compensation and furnishing medical treatment the Board may delay the hearing and its final order. In this case the existence of a ruptured disc was at least suspected and the Association could have complied with Art. 8309a and requested postponement by the Board of final action to await diagnosis and prognosis. Texas State Highway Dept. v. Pritchett, 155 Texas 383, 287 S.W. 2d 938.

■ The term "surgery" is not defined in the statute though technically it has a broad meaning. It does comprehend as suggested in Bellah some slight and simple procedures. It has been described as "that branch of medical science which treats of mechanical or operative measures for healing diseases, deformities or injuries." Aetna Life Ins. Co. v. Orr, 205 Ark. 566, 169

S.W. 2d 651, 654; State v. Eustace, 117 Kan. 746, 233 P. 109. Yet we are constrained to the opinion that as the term is used in the statute it refers to the common ordinary understanding of that word and as the art is practiced by a skilled surgeon. We think it would not be held generally to include mechanical application of weights and traction and other remedial devices, but embrace only cutting operations. At any rate the fact that the law works a hardship and inequality does not warrant the court in refusing to follow the law or to set up procedures according to its own idea of fairness and justice.

In Lowery it seemed to be unjust to the insurance carrier to compel an admission of liability in all hernia cases or take the risk of being held liable for a general injury on appeal. The Court admitted that its construction of the statute led to just that conclusion. "In spite of this" said the Court "no injustice is done. The statute defines the rights and liabilities of all parties to the insurance contract. The statute is therefore an integral part of such contract, and the insurance carrier is done no injustice if its rights are determined thereunder." [136 Texas 188, 148 S.W. 2d 1091]. We can make no better reply to the claim of injustice here.

Finally, the insurer claims that the 1957 amendments have worked far-reaching changes in the compensation law and would render the testimony admissible from the effective date of these amendments though it was not admissible theretofore. Section 7 of Art. 8306 formerly had a specific limitation of 90 days from the date of the injury for "medical attention, nursing or chiropractic service," and a specification limitation of 180 days from the date of injury for hospital services. Effective September 1, 1957, as amended, this section now reads in part as follows:

"The association shall furnish such medical aid, hospital services, nursing, chiropractic services, and medicines as may reasonably be required at the time of the injury and *at any time thereafter* to cure and relieve from the effects naturally resulting from the injury * * * . If the association fails to so furnish reasonable medical aid, hospital services, nursing, chiropractic services and medicines as and when needed after notice of the injury to the association or subscriber, the injured employee may provide said medical aid, nursing, hospital services, chiropractic services, and medicines at the cost and expense of the association." (Emphasis added).

Section 5 of Art. 8307 as amended now provides in part:

"Notwithstanding any other provision of this law, as amended, no award of the Board, and no judgment of the court, having jurisdiction of the claim against the association for the cost or expense of items of medical aid, hospital services, nursing, chiropractic services, medicines or prosthetic appliances furnished to an employee under circumstances creating a liability therefor on the part of the association under the provisions of this law, shall include in such award or judgment any cost or expense of any such items not actually furnished to and received by the employee prior to the date of said award or judgment. * * * ."

We are of the opinion that these two amendments in no way affect the question before us or operate to relax the rule. The Legislature has the power to expand the benefits of this Act in any way and to any extent that it may deem appropriate. That is what the Legislature has attempted to do by providing that even after a final award or judgment the Board has continuing jurisdiction to render successive awards against the Association for the cost of medical aid and hospital services. This may increase the carrier's liability and as claimed by it even result in payment of compensation for total and permanent disability when that condition has been remedied at the expense of the insurer and no longer exists. But even to avoid the latter result we are not at liberty to disregard the terms of the law as it is written by the Legislature and the necessary implications therefrom.

It is to be understood that we are not called upon here to interpret or construe these two 1957 amendments or to define the respective duties and obligations of the parties thereunder. All such questions are expressly reserved for consideration when and if they arise.

The judgments of the courts below are affirmed.

Opinion delivered October 5, 1960.

Rehearing overruled November 16, 1960.