Louis T. GARCIA, Petitioner,

v.

The TRAVELERS INSURANCE COMPANY,
Respondent.

No. A–9298.

Supreme Court of Texas.

March 13, 1963.

Rehearing Denied April 10, 1963.

Reid, Taylor & Sims, San Antonio, for petitioner.

Matthews, Nowlin, Macfarlane & Barrett, James D. Baskin, Jr., San Antonio, with above firm, for respondent.

GREENHILL, Justice.

In this workmen's compensation case, the question is whether the claimant should be limited to a recovery of 52 weeks of compensation because of his refusal to submit to surgery. The trial court, under facts which will be set out, held that he should not be so limited. Judgment was entered for the claimant for total and permanent disability. The Austin Court of Civil Appeals disagreed. It reversed the judgment of the trial court. Since the claimant had already been paid in excess of 52 weeks, it rendered judgment that the claimant take nothing by his suit. 360 S.W.2d 415.

The claimant, Louis Garcia, injured his back when he slipped while carrying 130 pounds of marble. The insurer began to make compensation payments shortly after injury and continued to make them for 82 weeks, up to the time of the Industrial Accident Board's final award. It also bore the expense of Garcia's treatment. He was placed in a hospital at Killeen and was moved to a hospital in San Antonio, where he was placed in traction. Both of the doctors who examined Garcia were of the opinion that he had a ruptured intervertebral disc in the lumbar or lower back region. Both recommended to him and to the insurance company that he have surgery. Garcia at first agreed to surgery, but changed his mind. He was told by the doctors that the odds were 80 to 90 per cent

in favor of the operation's being successful; that it would relieve his pain; that it was not regarded as a dangerous operation; and that he would be benefited materially by it if not cured entirely. But Garcia apparently entertained a fear of paralysis, and the doctors could not guarantee their results. There was testimony that there was some slight chance of infection, of injury from the anesthetic, or of paralysis if the surgery were not carefully done; but that none of this should occur if the operation were conducted by a competent physician. No doctor advised Garcia not to submit to surgery. The insurer tendered Garcia an operation at its expense, but he declined.

So the insurer took other steps set out by the Texas statutes. It admitted liability for the injury, responsibility for the hospital and medical expenses, and demanded in writing that Garcia submit to surgery. The demand was addressed to the Industrial Accident Board. The insurer also wrote Garcia's attorney of the demand and asked for a reply. Garcia's counsel declined for Garcia, saying, "My client, at the present time, can receive no assurance that he will not be crippled for the rest of his life if he submits to the operation requested by the insurance company."

Following the provisions of Sections 12e and 12b of Article 8306,[1] the Board appointed Dr. David Oliver, a physician, to examine Garcia. Dr. Oliver agreed with the diagnosis of the other two doctors, and he too recommended surgery. Garcia told Dr. Oliver he did not wish to be operated upon.

Thereafter the Board entered its final order. It provided that Garcia should be paid $35 per week for 100 weeks. As to the surgery, the order stated, "The Board finds that named insurer filed a Demand for Surgery. Said Demand for Surgery is hereby denied as named employee has de-

clined same." Notice of appeal to the district court was promptly given.

Trial was to a jury. The claimant made a motion at the outset to exclude any evidence which would refer to the offer of surgery or the benefits to be derived therefrom. The motion was overruled, and that point is not before us. See Hardware Mutual Casualty Co. v. Courtney, Tex., 363 S.W.2d 427 (1963). The evidence from Garcia and the doctors relating to surgery was given before the jury. The jury found that Garcia was totally and permanently disabled, and from these particular findings there is no appeal. The jury also found that Garcia had refused the tendered surgery; that the operation would have effected a cure or would have materially and beneficially improved Garcia's condition; and that it would not have been more than ordinarily unsafe for Garcia to have submitted to the tendered operation.

The defendant-insurer moved for judgment on the verdict. Its motion was denied. The plaintiff Garcia moved to disregard the answers to the issues as to the operation and for judgment on the rest of the verdict. Garcia's motion was granted.

While the case was under submission in the Court of Civil Appeals, that Court wrote Garcia through his attorney and asked if he were willing at that time to submit to the operation. Garcia replied that he would, at the time and place selected by the Court, and at the hands of a surgeon selected by the Court, if his compensation payments were accelerated to $105 per week, were paid to date, and upon other conditions. His letter is set out in 360 S.W.2d at 420. The Court of Civil Appeals treated this conditional answer as a refusal to submit to surgery. As stated above, since Garcia had already been paid more than 52 weeks of compensation, the Court of Civil Appeals rendered judgment that Garcia take nothing by his suit.

1. All references to statutes herein are to Vernon's Texas Civil Statutes Annotated. Emphasis herein is ours.

The rights here involved of both parties are entirely controlled by statute. Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521 (1960). And, as stated in Seelbach, "Where the statute directs that action be taken in a certain way it may be performed in no other manner."

Two sections of Article 8306 are determinative of the matter before the Court, and we construe them together. Section 12e deals with surgery in general. It provides that where liability exists for an injury and surgery will cure or benefit the employee, the employee or the insurer may demand an operation. After a written demand, "the board shall immediately order a medical examination of the employé in the same manner as is provided for in the section of this law relating to hernia." [That is Section 12b which will be referred to below.] If it is shown that the operation is advisable and will benefit the employee, "the board shall so state in writing *and upon unanimous order of said board in writing * * * [the board] shall direct* the employé * * * to submit himself to an operation for said injury. If the board should find that said operation is not advisable, then the employé shall continue to be compensated * * * under the general provisions of this law. *If the board shall unanimously find and so state in writing that said operation is advisable, it shall make its order to that effect*, stating the time and place when and where such operation is to be performed, naming the physicians * * *." The article then says that "if the employé refuses to submit to such operation, the board may order or direct the association [the insurer] to suspend the whole or any part of his compensation during the time of said period of refusal."

The section referred to as dealing with operations for hernia is Section 12b. It says that if the employee refuses to submit to an operation, the board shall order an examination. The physician selected shall make a written report, signed and sworn to, giving his findings and his opinion as to the advisability of an operation. If the examination and report do not show to the board the existence of disease or other physical condition rendering the operation more than ordinarily unsafe, "and the board shall unanimously so find and so reduce its findings to writing and file the same in the case * , * *, *then if the employé with the knowledge of* the result of such examination, such report, such opinions and *such findings, thereafter refuses to submit * * * to such operation*, he shall be entitled to compensation * * * for a period not exceeding one year." This one-year provision is the 52-week limitation prayed for by the insurer.

The statute appears clear to us that the claimant is not to be limited in his compensation until he is put to an election by the Board itself and thereafter declines surgery. Section 12e says in substance if *the Board* unanimously finds that an operation is advisable, and *the Board* enters an order in writing *directing* surgery, then the claimant is put to an election to have the surgery or risk the invocation of the law authorizing the Board to suspend his compensation. Similarly, Section 12b says that if *the Board* unanimously finds the surgery advisable and shall enter an order in writing directing the surgery, *"then* [and only then] if the employé with the knowledge of * * * such findings, [i. e., of such written order] thereafter refuses to submit * * * to such operation," he shall be entitled to compensation for a period not to exceed 52 weeks.

The only order entered by the Board relative to surgery was that it found that the insurer had filed a demand for surgery, and that "said demand for surgery is hereby denied as named employee has declined same." The statute makes it the duty of the Board to make specific findings when demand for surgery is made. The insurer complied with the steps required of it to invoke the action of the Board, but the Board did not say in writing to the claimant: we think an operation is advisable, is not unsafe, and you are directed to

 

submit to an operation. Since that was not done, as clearly required by the statute, the claimant was not put to an election to have surgery or not, and he may not have his compensation limited as if he had deliberately elected to decline surgery after having been directed to submit thereto by the Board. The trial court therefore correctly disregarded the findings of the jury with regard to surgery.

We turn now to the action of the Court of Civil Appeals. As previously stated, that Court, on its own motion, wrote Garcia and asked him [in view of the jury's findings] if he were now willing to submit to an operation. His answer was treated as negative. Judgment was thereupon entered that he take nothing.

This Court said in Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W. 2d 521 at 523 that "The trial court is not clothed with those powers that are placed exclusively with the Board. Thus the trial court has no power to order or supervise an operation or to direct a medical examination * * *." In Tally v. Texas Employers' Insurance Association, 129 Tex. 134, 102 S.W.2d 180 (1937), the trial court undertook to direct the claimant to submit to an operation. This Court said that under our compensation statutes, the ordering of an operation was in the nature of an interlocutory order because other consequences necessary to a final order would vary with the outcome of the operation. The opinion then states that:

> "No such power is given the courts in such cases. In this regard, when a hernia case reaches a court, the rights of the parties have already become fixed by the events previously transpiring, and the court only has the power and jurisdiction to finally try the case and enter one final judgment. The court in this case has no power to require a hernia operation." 102 S.W. 2d at 183.

Since it has been held that the trial court ·is without power to order and supervise an operation, the Court of Civil Appeals also lacks such power under our statutes. And since the Court had no power effectively to direct and supervise the operation, select hospitals and physicians, and do such other things as are necessary to protect the claimant, the claimant may not be put to a binding election to submit to such operation as directed by the Court of Civil Appeals or have his compensation limited as for wilfully refusing to comply with an order of the Board.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.