Leona **DUNCAN**, joined pro forma by her husband, **Doyle Duncan**,

v.

The **FIDELITY & CASUALTY COM-PANY OF NEW YORK.**

**Civ. A. No. 64–C–48.**

United States District Court
S. D. Texas,
Corpus Christi Division.

Feb. 11, 1966.

Butler, Schraub & Gandy, Roger Butler, Corpus Christi, Tex., for plaintiffs.

Lewright, Dyer & Redford, James W. Wray, Jr., Corpus Christi, Tex., for defendant.

GARZA, District Judge.

The Plaintiff, Leona Duncan, appealed to this Court from a final award of the Industrial Accident Board of June 2, 1964, terminating her Workmen's Compensation payments after Defendant Insurer had paid a total of fifty-eight (58) weeks compensation to the Plaintiff.

The Plaintiff suffered a back injury as the result of a fall on April 11, 1963, at the cafe where she was employed as a waitress. The parties have stipulated that she received an accidental injury in the course of her employment on that date; that while the matter was pending before the Industrial Accident Board, the Defendant admitted liability for the payment of Workmen's Compensation benefits, and filed written demand for surgery upon the Plaintiff; that the Board ordered an examination of the Plaintiff by Dr. Herbert Burns; that Dr. Burns made a report of his examination to the Board; that the Board issued its unanimous order directing the Plaintiff to submit to surgery within twenty (20) days from April 30, 1964, the date of the order; that on May 1, 1964, the Plaintiff, through her attorney, advised the Board that she would not comply with its order; and that Defendant paid fifty-eight (58) weeks compensation to the Plaintiff from April 12, 1963, to May 21, 1964.

In the pretrial stipulation submitted through their attorneys, the parties agreed that the issues in controversy were as follows:

"1. Will surgery upon Leona Duncan materially benefit and improve her condition?

"2. Is such surgical operation more than ordinarily unsafe?

"3. Did Leona Duncan have any total disability from and after 58 weeks from the date of her alleged injury?

"4. Did Leona Duncan have any partial disability from and after 58 weeks from the date of her alleged injury?

"5. What is Leona Duncan's average weekly wage?"

The case was tried before a jury upon the theory that the Defendant had fully complied with the statutory requirements of the Texas Workmen's Compensation Law so as to allow it to prove the benefits of surgery upon the Plaintiff and

that the operation would not be more than ordinarily unsafe.

The case was submitted to the jury on special interrogatories inquiring, first, if from a preponderance of the evidence it would have been more than ordinarily unsafe for the Plaintiff to have submitted to the operation on her back on April 30, 1964. The jury was next asked if from a preponderance of the evidence surgery upon the Plaintiff would have materially benefited and improved her condition on said date. The remaining interrogatories inquired as to the nature and duration of Plaintiff's disability as a result of her accidental injury, and further asked for the difference between her average weekly wage before the injury and her average weekly wage earning capacity during any partial disability which might be found.

The jury returned its verdict, finding that the back operation would not have been more than ordinarily unsafe, that it would have benefited and improved the Plaintiff's condition, and that the injury was a producing cause of total and permanent disability.

Since § 12b and § 12e, Article 8306, Vernon's Ann.Tex.Civ.St., limit compensation to a period of one year for an employee who refuses to submit to an operation unanimously ordered by the Board after examination, and since the Defendant has paid the Plaintiff fifty-eight (58) weeks of compensation; the Defendant Insurer moves for judgment on this verdict that the Plaintiff take nothing and that costs be assessed against the Plaintiff.

Plaintiff has also filed a motion for judgment awarding compensation for total and permanent disability, contending that the answers to the interrogatories inquiring about the advisability of surgery should be ignored and the judgment based upon the jury findings of total and permanent disability.

In support of this position Plaintiff for the first time raises the point that the interlocutory order of the Board directing the Plaintiff to submit to surgery was void because of noncompliance with §§ 12b and 12e of Article 8306, and because the final award of the Board superseded the order directing surgery and found no further disability.

Section 12e, Article 8306, sets forth the steps to be taken in determining the advisability of a surgical operation and the consequences of refusing to submit to surgery when ordered by the Board. This section incorporates by reference some of the provisions of § 12b which is the hernia statute.

Plaintiff contends that one of the provisions in § 12b which is incorporated by § 12e is the requirement that the physician's report of examination be signed and sworn to, and that the report of Dr. Burns recommending a laminectomy and disc removal, upon which the Board ordered the Plaintiff to submit to surgery, was not sworn to as required by the hernia statute, § 12b.

Defendant contends that § 12e, which relates to all other injuries, makes no such requirement either specifically or by reference to § 12b.

■ It is well recognized that the rights and obligations of parties to a Workmen's Compensation suit are entirely controlled by the statute, since the Act is in derogation of the common law, and that every step provided therein must be taken in the manner directed, and no other. Truck Insurance Exchange v. Seelbach, 1960, 161 Tex. 250, 339 S.W.2d 521.

Section 12e provides that an operation may be ordered by the Board only when there has been (1) a demand in writing to the Board by either party, (2) an order by the Board for a medical examination as provided in § 12b, (3) an examination, report of facts and opinions of experts, "all reduced to writing and filed with the board," showing that such operation is advisable and will relieve the condition of the injured employee or will materially benefit him; (4) a written statement to that effect by the Board; and (5) the unanimous order of the Board in writing directing the employee to submit to the operation,

a copy of which shall be directed to the employee and the association. Section 12e concludes, "The results of such operation, the question as to whether the injured employé shall be required to submit thereto and the benefits and liabilities arising therefrom shall attach, be treated, handled and determined by the board in the same way as is provided in the case of hernia in this law."

Section 12b provides in the case of hernia, that surgery shall be provided and if refused the Board shall order an examination and report which must be signed and sworn to, stating whether the operation is advisable and not more than ordinarily unsafe. If the Board finds the operation advisable and not more than ordinarily unsafe, and orders the employee to submit thereto, then upon refusing the operation his compensation is limited to a maximum of one year.

The cases relied upon by the Plaintiff involve attempts by the insurer to prove the beneficial effects of surgery at trial where it has not been tendered to the claimant or ordered by the Board.

In Garcia v. Travelers Insurance Co., S.Ct. of Tex., 1963, 365 S.W.2d 916, the employee declined surgery when the insurer first demanded it, and although the Board directed the employee to submit to an examination, it never ordered him to submit to an operation. Since the employee had never been formally put to the election of accepting or declining surgery, his compensation would not be limited to one year, even though the jury had found that the surgery would have materially benefited him and was not more than ordinarily unsafe.

In Seelbach, supra, the insurer sought to introduce medical testimony asserting the beneficial effects of surgery, where it had not admitted liability or tendered an operation prior to the final award of the Board, and the Court held that such testimony was properly excluded. It thus applied to a case under § 12e the same consequences of failing to comply with the statutory requirements as those provided by § 12b.

In American General Insurance Co. v. Quinn, CCA Texarkana 1955, 277 S.W.2d 223, the Court held that before an insurer could prove the effect of an operation, it is mandatory that it admit liability, tender the operation while the claim is pending before the Board, demand an examination if the employee refuses the operation, and show that the examination or examinations were had and the action of the Board thereon. Since the insurer had not complied with any of these requirements, it was not entitled to plead or prove the possible benefits of surgery. This result was approved in Seelbach.

In stating that the two sections, 12b and 12e, must be construed together, the Court in Quinn was referring to the consequences arising from a failure to follow the required steps.

Section 12e specifically states in the above quoted provision that the benefits and liabilities arising from the Board's determination on the question of surgery shall attach, be treated, handled and determined the same way as is provided by § 12b. As far as this Court can determine, the Texas courts have never held that the procedural requirements of the two sections are identical.

As stated by Judge Hutcheson in Heard v. Texas Compensation Insurance Co., 5 Cir. 1936, 87 F.2d 30, while there are some unsubstantial differences in the wording of the two sections, they are in legal effect the same, proceedings under § 12e being given the same effect as those under § 12b. The District Court, therefore, had no jurisdiction to entertain a motion for the tender of an operation, determine its necessity, and order it against an unwilling claimant, since no request had been made to the Board for an operation.

Since § 12e merely requires that the report and opinions relative to the medical examination be reduced to writing, there is no reason to add the requirement of § 12b that the physician's report be signed and sworn to. There are some procedural differences between the two sections, and § 12e does not incorpo-

rate all of the provisions of the hernia statute, § 12b.

I hold, therefore, that the strict requirements of the Act have been met, and it was not necessary that Dr. Burns' report and recommendation be sworn to.

Turning to Plaintiff's alternative theory for holding the order directing surgery void, the final award of the Board stated:

"On review of Order of the Board dated April 30, 1964, the Board finds that for reasons unknown to this Board the claimant has refused and failed to undergo surgery as ordered by this Board on April 30, 1964. Therefore, final award entered this date June 2, 1964, supercedes order entered April 30, 1964.

"That following inflicting of injury, named insurer assumed liability and made payments of compensation. The Board finds that the evidence submitted fails to establish that the claimant suffered further disability than that for which compensation has heretofore been paid. Therefore, claim for additional compensation is denied.

"The Board finds that Erma L. Duncan, Erma Leona Duncan and Leona Duncan is one and the same person."

Plaintiff contends that since this order superseded the order of April 30, 1964, directing surgery, and found no further disability, the Plaintiff's obligation to make an election was relieved.

There is no merit to the contention that the order directing surgery was invalidated or reversed by the final award. The first order was interlocutory, and after Plaintiff's refusal to submit to an operation, the Board was required by law to enter a final award before the Plaintiff could appeal to the court and obtain a trial de novo. The Board having found surgery to be advisable and not more than ordinarily unsafe, and the Plaintiff having refused such surgery, it had no alternative but to issue a final award denying any further compensation, since the Defendant Insurer had already paid compensation for a period longer than that required.

Plaintiff could even have obtained a writ of mandamus requiring the Board to make such a final award. Industrial Accident Board of Texas v. Hudson, CCA Austin 1952, 246 S.W.2d 715.

Although the language in the final award that the claimant failed to establish further disability than that for which she had theretofore been paid may have been inapt, it does not mean that the Board reversed its prior findings on the question of surgery.

This case was tried from beginning to end on the theory agreed to by both counsel and the Court, that the initial questions to be determined by the jury were the safety and effects of the surgery which the Board had determined to be advisable, and that adverse findings on these points would be a bar to any further recovery by the Plaintiff. It follows, therefore, that the issue of the advisability of surgery was properly submitted to the jury and was resolved by the jury's answers that the operation would not have been more than ordinarily unsafe and would have materially benefited and improved Plaintiff's condition.

Having been put to an election by the Board and refused the tendered surgery, the Plaintiff is limited to compensation for a period not exceeding one year, which has already been paid by Defendant.

Therefore, judgment for the Defendant in accordance with the jury verdict is being signed for entry this date.