HOUSTON FIRE & CASUALTY INSUR-
ANCE COMPANY, Petitioner,

v.

Harold G. DIETER, Respondent.

No. A–11569.

Supreme Court of Texas.

Dec. 31, 1966.

Evans, Pharr, Trout & Jones, Charles B.
Jones and Carlton B. Dodson, Lubbock, for
petitioner.

Huffaker & Green, Harold Green, Taho-
ka, for respondent.

STEAKLEY, Justice.

This is an agreed workmen's compensa-
tion case submitted in accordance with Rule
262, Texas Rules of Civil Procedure. Pe-
titioner is the compensation carrier; Re-
spondent is the injured employee and claim-
ant. The one question presented for deci-
sion is whether Petitioner, who had not in-
voked the provisions of Section 12e of
Article 8306 [1], was entitled in the trial of
the case to make proof of the possible bene-

1. The reference is to the statute as it appears in Vernon's Annotated Civil Statutes.

ficial effects of pre-trial surgery voluntarily undertaken by Respondent at the hands of his personal physician. The agreed statement of facts submitted to the trial court is quoted in the opinion of the court of civil appeals. It appears therefrom that on June 19, 1964, Respondent suffered a compensable injury to his back consisting of a rupture of two intervertebral discs and other related injuries. An award was entered by the Industrial Accident Board on January 27, 1965. An appeal was timely filed on March 2, 1965. On May 19, 1965, Respondent voluntarily and at his own expense submitted to surgery at the hands of his personal doctor to correct the results of the injury. A semihemilaminectory at L4–5 and L5–s1 interspaces was performed on the right side, and degenerated disc material was removed. The injury was the cause of the rupture of the discs and consequential protrusions and irritation of the nerve roots. Respondent's surgeon was of the medical opinion that the Respondent was totally incapacitated at the time of the surgery which incapacity would have continued as a permanent condition; but he was of the further medical opinion that the surgery was beneficial in partially restoring Respondent's capacity to work. It was stipulated that if this testimony of the surgeon is admissible, Respondent is entitled to recover the sum of $6,000; but if inadmissible, he is entitled to recover the sum of $10,000. The trial court ruled the evidence admissible and entered judgment for Respondent in the lesser stipulated amount; this was held to be error by the court of civil appeals which reversed the judgment of the trial court and rendered judgment for Respondent in the higher stipulated amount. 403 S.W.2d 222. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

Section 12e of Article 8306 provides in part:

"In all cases where liability for compensation exists for an injury sustained by an employé in the course of his employment and a surgical operation for such injury will effect a cure of the employé or will materially and beneficially improve his condition, the association or the employé may demand that a surgical operation be had upon the employé as herein provided, and the association shall provide and pay for all necessary surgical treatment, medicines and hospital services incident to the performance of said operation, provided the same is had. In case either of said parties demands in writing to the board such operation, the board shall immediately order a medical examination of the employé in the same manner as is provided for in the section of this law relating to hernia. If it be shown by the examination, report of facts and opinions of experts, all reduced to writing and filed with the board, that such operation is advisable and will relieve the condition of the injured employé or will materially benefit him, the board shall so state in writing and upon unanimous order of said board in writing, a copy of which shall be delivered to the employé and the association, shall direct the employé at a time and place therein stated to submit himself to an operation for said injury. * * *"

Petitioner's points, in summary, are that failure to invoke the provisions of Section 12e does not preclude proof of the possible beneficial effects of surgery actually performed prior to trial, Petitioner asserting that in such situation "the insurer is entitled to show the effect of the surgery, be it good or bad, and the claimant is entitled to show the effects of surgery, good or bad, since all of such testimony is material as bearing on the actual condition of the [claimant] at the time of trial." While agreeing that the question before us is one of first impression, Respondent argues that we have said, in effect, particularly referring to Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521 (1960), that in order for the compensation carrier "to reap any benefits from any testimony concerning the beneficial effects of

surgery" the carrier "must do certain things at certain times and that it is too late to reap the benefits of any such testimony after a compensation claim has been decided by the Industrial Accident Board." The underlying reasoning of Respondent is that "whether the surgery is performed or not, the testimony concerning its beneficial effects will be merely expressions of medical opinion as to 'probabilities' which is sometime fraught with extreme frailties." From this, Respondent asserts that we intended in *Seelbach* to condemn "resort to probabilities" in connection with any testimony concerning surgery unless it had been performed under the supervision of the Industrial Accident Board, whereby the Board could delay a final decision on the claim until the effects of the surgery became a certainty.

We held in *Seelbach* that medical testimony asserting the beneficial effects of unperformed surgery is not admissible in the trial court on appeal where the insurer did not admit liability, where no operation was tendered or requested in the proceedings before the Board, and where no surgery was indicated prior to the rendition of the final award by the Board. In so holding, we recognized the dilemma posed by the statute [2] and resolved the problem favorably to the claimant. Our reasoning emphasis was upon the inherent element of uncertainty where the actual effects and results of surgical procedures were not susceptible of proof at time of trial because of their nonutilization. We said that "the benefits from surgery are to be determined not by

evidence based on probabilities but rather on what has actually happened." The crucial consideration that surgery had not in fact been performed is also common to Texas Emp. Ins. Assn. v. Shelton, 161 Tex. 259, 339 S.W.2d 519 (1960) and Hardware Mutual Casualty Co. v. Courtney, 363 S.W. 2d 427 (Tex.Sup.1963).

■ It is settled, of course, that the rights and obligations of parties in a suit brought under the Workmen's Compensation Act are controlled by the statute. But Section 12e does not expressly preclude evidence of the results of pre-trial surgery as it bears on the question of the incapacity of the injured employee at the time of the trial. The court of civil appeals has read this restriction into the statute by implication and held such proof impermissible except and unless the carrier has demanded surgical procedures and otherwise met the statutory conditions during the pendency of the claim before the Industrial Accident Board. With this we disagree.

The problem here to be solved presents the other side of the *Seelbach* coin. The problem in *Seelbach* was twofold: first, the obvious speculative element of opinion testimony as to the possible results of surgery which had not occurred and might never occur; and second, the undesirable result which was described as being "tantamount to applying the provisions of §§ 12b and 12e in the trial court." Here, surgical procedures have been utilized at the voluntary instance of the injured employee and the results are properly the subject of proof;

2. "The insurer says that under the 1957 amendments Seelbach, after recovering a final judgment in the district court awarding to him compensation based on total and permanent disability, may thereafter apply to the Board for and receive an operation that will completely cure or substantially benefit him all at the expense of the insurer. Seelbach would thus be drawing compensation for total and permanent disability and at the same time be employed at full wages. This would be unfair and unjust, says the carrier. On the other hand, consider the medical testimony that in all probability

Seelbach would be cured by an operation and return to work with little, if any, disability. If the jury gave full credence to this testimony it would award a few months of total disability followed by ten per cent permanent partial. It might then be discovered that a later performed operation was of no benefit, but actually injurious. Admittedly, Seelbach would thus be totally and permanently disabled but would receive much less in the way of compensation than his condition would require. That result would be equally unfair and unjust. * * *" Id. 339 S.W. 2d at 524–525.

further, the trial court is not being called upon to order or supervise surgery or act in any respect as an administrative board.

The inquiry at the trial of a workmen's compensation case is the extent of incapacity of the injured employee at that time. It is the purpose of the Workmen's Compensation Act to afford compensation for incapacity for work as it then exists. The degree and duration of this incapacity is reduced and earning capacity is restored to the extent that surgical procedures have corrected the disabling results of a compensable injury. It cannot be gainsaid that there is less speculation and uncertainty where surgery has been performed and its results susceptible to proof than in the situation of unperformed surgery where the proof is necessarily limited to expressions of opinion and conjecture as to what would be the results of surgery if performed. Moreover, any uncertainty which may exist with respect to performed surgery is present alike whether the matter is before the Board or the court, and no significant reason is perceived for limiting proof thereof to the period when the claim is pending before the Board. No case has been made known to us where evidence of the results of surgery has been held inadmissible, or where medical and lay witnesses have been required to exclude consideration thereof in testifying to the present incapacity of an injured employee, and in stating a prognosis for the future. Such a requirement of exclusion would necessarily restrict a witness in his testimony to less than the full and present facts. Cf. National Surety Corp. v. Bellah, 245 F.2d 936 (5th Cir. 1957). Section 12e of Article 8306 does not evidence a legislative intent to thus withhold from the court or jury the actual facts at the time of trial concerning the then existing incapacity for work of an injured employee. The statute shows by its provisions to have been enacted for the purpose of establishing a procedure under which, in proper circumstances, an injured employee may be required to submit to curative surgical procedures or suffer a suspension of compensation payments. Its provisions are to be strictly enforced against the compensation carrier before an injured employee may be thus penalized. But beyond this there is nothing to evidence a legislative purpose to foreclose proof of the fact and results of surgery voluntarily assumed by the employee subsequent to the award of the Board and prior to trial of an appeal suit.

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.